Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. The employer/employee relationship existed between plaintiff and defendant-employer.
3. The Companion Property and Casualty Insurance Company is the carrier on the risk.
4. Plaintiff is alleging an injury by accident that occurred on or about 17 June 1999, resulting in an injury to his back.
5. The defendant-employer has denied liability.
 *********** ORDER
Plaintiffs Motion to Consider Additional Evidence in the form of an affidavit signed by plaintiffs employer, Gary C. Peele, is hereby ALLOWED.
 ***********
Based upon all of the competent evidence of record, the Full Commission rejects the findings of fact found by the Deputy Commissioner and enters the following:
 FINDINGS OF FACT
1. Plaintiff was employed by Triangle Floor Services on Thursday, 17 June 1999. Although plaintiff had a history of minor back ailments due to the nature of his work, he had worked full days from the beginning of that week without physical difficulty.
2. At the hearing before the Deputy Commissioner, plaintiffs employer, Gary C. Peele, testified that plaintiff did not work the three days prior to the date of his injury due to back pain. On 9 June 2000, Mr. Peele provided plaintiff with an affidavit in which he stated that his testimony was incorrect and that personnel records indicated that plaintiff did work the three days prior to his injury. Plaintiff moved before the Commission to have the affidavit included in the record before the Full Commission. On 10 August 2000, Commission Chairman Buck Lattimore issued an Order holding plaintiffs motion in abeyance pending the hearing before the Full Commission.
3. Plaintiff reported to work on 17 June 1999, at the home of Gary Peele. Plaintiff was assigned to assist Will Knighting, his supervisor, in refinishing some wood floors in an occupied home. While he and Mr. Knighting were attempting to lift the 212 pound sanding machine up some stairs, plaintiff felt something snap in his back.
4. Plaintiff continued to work, attempting to do the "edging of one room while Mr. Knighting operated the sander. When plaintiffs back pain worsened, he lay down on the front porch of the home and waited for Mr. Knighting to finish the job. Thereafter, Mr. Knighting drove plaintiff back to Mr. Peeles home and plaintiff was able to drive himself home.
5. Plaintiff remained in bed for the next several days. His back pain did not improve, and he began to experience a tingling sensation in his left leg. On 22 June 1999, plaintiffs sister took him to the Wake Med Emergency Room. Plaintiff received x-rays of the lumbar spine, which reveal minor degenerative disc disease at L2-3, and narrowing at L5-S1. Plaintiff was diagnosed with minor degenerative disc disease, which was likely related to his age and within normal limits.
6. On 29 June 1999, plaintiff presented to chiropractor Dr. Steven G. Isadore with complaints of constant, throbbing sharp pain from the left leg to plaintiffs neck, which worsened with activity. Plaintiff was unable to stand straight and had difficulty putting weight on his left leg. There was noticeable swelling covering the left sacroiliac joint. Dr. Isadore determined that plaintiffs condition was "most likely due to an injury, and he suspected that plaintiff had a herniated disc. He did not believe that plaintiff was malingering, or that he could return to work. Dr. Isadore recommended a TENS unit for plaintiff, ordered an MRI, and referred plaintiff to a neurologist.
7. On 6 July 1999, at the instruction of Dr. Isadore, plaintiff was seen by neurologist Dr. Rudolph Maier. Dr. Maier did not find any evidence of a nerve root injury, but noted the tenderness and swelling of the sacroiliac joint. He gave plaintiff two injections and prescribed pain medication.
8. Dr. Maier treated plaintiff two more times. On 16 July 1999, he stated that plaintiff was getting "some better, but not much. Again, Dr. Maier did not indicate that plaintiff was suffering from any nerve root injury. On 3 August 1999, plaintiff was again treated by Dr. Maier. It was at this time that Dr. Maier felt that there may be a nerve root injury. An MRI was taken on 6 August 1999, which revealed a herniated disc at L5-S1.
9. Plaintiff continued to receive treatment from Dr. Isadore. On 3 January 1999, Dr. Isadore was of the opinion that plaintiff had a herniated disc at L5-S1 which was still causing pain. Plaintiff had not worked since 17 June 1998, and in Dr. Isadores opinion, he remained unable to do any physical labor. Dr. Isadore testified that his recommendation for plaintiff was that he receive a surgical consult regarding his ruptured disc, and that delay could likely result in chronic pain even after having the surgery.
10. Dr. Maier testified in his deposition that at his last treatment of plaintiff on 19 October 1999, plaintiff stated to him that he could not get out of bed and was essentially bed-ridden. Dr. Maier stated that on that date, plaintiffs pain was "quite severe and plaintiff remained unable to return to his job, even for a short period of time, and that it was his belief that plaintiff would be out of work for a long period of time.
11. Plaintiffs current condition is the direct result of a specific traumatic incident which occurred on 17 June 1998, which arose out of and in the course of plaintiffs employment with defendant-employer, and which has rendered plaintiff totally disabled since the date of the incident. Plaintiff has not reached maximum medical improvement at this time.
12. At the hearing before the Deputy Commissioner, defendants agreed to provide the Commission with a Form 22 wage chart establishing plaintiffs average weekly wage. No Form 22 has been filed with the Commission. Plaintiff testified and the undersigned find as fact, that his average weekly wage on 17 June 1998 was $510.00, yielding a weekly compensation rate of $340.01.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reverses the conclusions of law of the Deputy Commissioner and enters the following:
 CONCLUSIONS OF LAW
1. On 17 June 1998, plaintiff suffered an injury as a direct result of a specific traumatic incident which arose out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. 97-2(6).
2. As a result of plaintiffs injury, he has been rendered totally disabled from 17 June 1998 and continuing until he returns to work earning the same or greater wages or until further order of the Commission. Accordingly, plaintiff is eligible for total disability compensation in the weekly amount of $340.01, beginning on 17 June 1998 and continuing until further order of the Commission. N.C. Gen. Stat. 97-29.
3. Plaintiff is entitled to payment by defendants of all medical treatment related to his compensable injury which is reasonably necessary to effect a cure or give relief, including surgery on plaintiffs ruptured disc. N.C. Gen. Stat. 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff total disability compensation in the weekly amount of $340.01, from 17 June 1998 to the present and continuing until further order of the Commission. All amounts which have accrued as of the date of this Opinion and Award shall be paid in a lump sum, subject to attorneys fees approved below.
2. Defendants shall pay for all medical treatment related to plaintiffs compensable injury which is reasonably necessary to effect a cure or give relief, including a surgical consult regarding the necessity of operating on plaintiffs ruptured disc.
3. Plaintiffs counsel in entitled to a reasonable attorneys fee of 25% of the compensation awarded in Paragraph 1 above. Defendants shall pay 25% of the lump sum award to plaintiff directly to plaintiffs counsel. Thereafter, every fourth payment to plaintiff shall be paid directly to plaintiffs counsel.
4. Defendants shall pay the costs of this action.
This the day of January, 2001.
 S/______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/__________________ DIANNE C. SELLERS COMMISSIONER
 S/__________________ RENE C. RIGGSBEE COMMISSIONER